# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

JOSHUA MARQUIZ,
             Appellant,

      v.

DEPARTMENT OF DEFENSE,
             Agency.

DOCKET NUMBER
SF-4324-15-0099-I-1

DATE: July 12, 2016

Brian J. Lawler, Esquire, San Diego, California, for the appellant.

Wayne G. Carter, Jr., Santa Ana, California, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member
Chairman Grundmann issues a separate opinion.
Member Robbins issues a separate opinion.

## ORDER

¶1      The agency has filed a petition for review of the initial decision, which granted the appellant's request for corrective action in his Uniformed Services Employment and Reemployment Rights Act of 1994 appeal. The two Board members cannot agree on the disposition of the petition for review. Therefore, the initial decision now becomes the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1200.3(b) (5 C.F.R. § 1200.3(b)). This decision shall not be considered as precedent by the Board in any other case. 5 C.F.R. § 1200.3(d).

¶2      Based on the initial decision, which now becomes the final decision of the Board, the parties' obligations are set out below:

¶3    The agency must pay the appellant the appropriate amount of differential pay under 5 U.S.C. § 5538(a) during each pay period described in section 5538(b) that he is absent from his civilian position in order to perform active duty in the uniformed services pursuant to a call or order to active duty under 10 U.S.C. § 12301(d) during a national emergency declared by the President. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).

¶4    The agency must pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. The appellant must cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out its obligations. If there is a dispute about the amount of back pay, interest due, and/or other benefits, the agency must pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶5    The agency must tell the appellant promptly in writing when it believes it has fully carried out its obligations and of the actions it took to carry out its obligations. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶6    No later than 30 days after the agency tells the appellant that it has fully carried out its obligations, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out its obligations. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out its obligations, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶7    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached.  The agency must timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of the final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory

deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.

¶1 The appellant is an Information Technology Specialist for the agency. Initial Appeal File (IAF), Tab 15 at 13. He is also a Technical Sergeant in the U.S. Air Force Reserve. IAF, Tab 1 at 2, Tab 15 at 9. The military ordered him to active duty for operations intelligence training from October 20, 2014, to April 19, 2015, under the authority of 10 U.S.C. § 12301(d). IAF, Tab 15 at 9-12. Section 12301(d) allows the Secretary of Defense to order a reservist to active duty at any time with the reservist's consent.

¶2 During that period, the appellant filed the instant action under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), alleging that the agency had erroneously refused to pay him differential pay—the difference between his civilian pay and military pay. IAF, Tab 1 at 2-6, Tab 15 at 4-7. After holding oral argument on the legal question of whether the appellant was entitled to differential pay, the administrative judge granted the appellant's request for corrective action. The agency has filed a petition for review.

¶3 I would deny the agency's petition for review. The administrative judge correctly determined that the appellant is entitled to corrective action for the agency's failure to provide him with differential pay.

¶4 Pursuant to 5 U.S.C. § 5538(a)-(b), when a Federal employee is absent from his civilian job to perform active duty in the military, his employing agency may be required to pay him differential pay. The absent employee is entitled to differential pay if: (1) he is not otherwise receiving basic pay from his civilian position; (2) he is entitled to reemployment rights under USERRA; and (3) he is

"absent from [his civilian position] in order to perform active duty in the uniformed services pursuant to a call or order to active duty under a provision of law referred to in section 101(a)(13)(B) of title 10." 5 U.S.C. § 5538(a)-(b). Section 101(a)(13)(B) refers to service under "section 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 of this title, chapter 15 of this title, section 712 of title 14, or any other provision of law during a war or during a national emergency declared by the President or Congress." 10 U.S.C. § 101(a)(13)(B).

¶5        Here, the parties do not dispute the administrative judge's findings that the appellant was entitled to reemployment, on active military duty, and not otherwise receiving pay from the agency.  Thus, the only issue in dispute is whether the appellant's service is covered under section 101(a)(13)(B).  I would find that it is.  Although section 12301(d) is not one of the laws enumerated in section 101(a)(13)(B), it clearly falls within the confines of "any other provision of law," and, as noted by the administrative judge, the appellant was called for active duty "during a national emergency declared by the President." Consequently, the administrative judge correctly found that the agency's orders fell within the catchall provision of section 101(a)(13)(B).  The appellant, therefore, was ordered under 5 U.S.C. § 5538 to active duty "under a provision of law referred to in section 101(a)(13)(B)." As such, he was entitled to differential pay during his absence from the agency, and is accordingly entitled to corrective action.

¶6        It is immaterial for purposes of 5 U.S.C. § 5538(a)-(b) that the statute at issue here is not among those enumerated in President George W. Bush's September 14, 2001 emergency declaration.  66 Fed. Reg. 48,199 (Sept. 14, 2001).  It is true that the National Emergency Act states in part that "[w]hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act." 50 U.S.C. § 1631.  The question before us, however, is

not whether the President exercised or invoked powers under 5 U.S.C. § 5538—it is whether the appellant was absent in order to perform active duty in the uniformed services pursuant to a call or order to active duty under a provision of law referred to in section 101(a)(13)(B) of title 10. Here, it is undisputed that the appellant was ordered to active duty under such a provision of law, and, unlike the National Emergency Act, there is no requirement in 5 U.S.C. § 5538 that the provision of law be invoked or "exercised" by the President. Thus, I would find that the appellant is entitled to corrective action for the agency's failure to provide him with differential pay.


_____

Susan Tsui Grundmann
Chairman

in

*Joshua Marquiz v. Department of Defense*

MSPB Docket No. SF-4324-15-0099-I-1

¶1    The dispositive question before us in this claim under the Uniformed Services Employment and Reemployment Rights Act is whether the appellant has shown that he is entitled to differential pay.  I believe that he has not.

¶2    The appellant, a civilian employee of the Federal Government, is also a member of the U.S. Air Force Reserves.  Initial Appeal File (IAF), Tab 1 at 2, Tab 15 at 9.  He was ordered to active military duty, under the authority of 10 U.S.C. § 12301(d), to attend training from October 20, 2014, to April 19, 2015.  IAF, Tab 15 at 9-12.  Section 12301(d) provides that a reservist may be called to active duty at any time based on the request of an authorized individual, so long as it is done "with the consent of that" reservist.

¶3    When a Federal employee is absent from his civilian job to perform active military duty, his employing agency may be required to pay him differential pay—the difference between his civilian pay and his military pay.  5 U.S.C. § 5538.  The payment of differential pay is required only if, among other things, the employee was ordered to active duty "under a provision of law referred to in section 101(a)(13)(B) of title 10."  5 U.S.C. § 5538(a).  Section 101(a)(13)(B) of title 10 refers to service under "section 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 of [title 10], chapter 15 of [title 10], section 712 of title 14, *or any other provision of law during a war or during a national emergency declared by the President or Congress*."  10 U.S.C. § 101(a)(13)(B) (emphasis added).

¶4    Although the appellant's military pay is less than his civilian pay, the agency decided not to pay him the difference, contending that an individual serving military duty ordered under section 12301(d) does not qualify for differential pay.  The appellant argues that his orders fall within the catch-all

provision of section 101(a)(13)(B) because there has been a declared national emergency since the terrorist attacks of September 11, 2001, which persists to this day.

¶5    At first glance, if one works through the statutory cross referencing, it seems pretty straightforward.  The military ordered the appellant to active duty under section 12301(d).   Section 12301(d) is not one of the laws listed in section 101(a)(13)(B), but it clearly falls within the confines of "any other provision of law" and, as noted, the appellant was called for active duty "during a national emergency declared by the President."   Therefore, it is true that the appellant was ordered to active duty "under a provision of law referred to in" section 101(a)(13)(B).   Thus, at least initially, the appellant appears entitled to differential pay during his absence.  However, our inquiry does not end there.

¶6    It is critical that we also review the National Emergency Act, which was enacted to limit—and provide Congressional oversight over—the use of emergency authorities given to the President.   One provision of that statute provides as follows:

> When the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised *unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act.*  Such specification may be made either in the declaration of a national emergency, or by one or more contemporaneous or subsequent Executive orders published in the Federal Register and transmitted to the Congress.

50 U.S.C. § 1631 (1976) (emphasis supplied).   In his September 14, 2001 emergency declaration, President George W. Bush enumerated a number of statutory provisions that he intended to utilize.  66 Fed. Reg. 48,199 (Sept. 14, 2001).  The statute at issue here is not among those enumerated statutes.  Eight of the statutes have language reflecting that they apply in time of war or national emergency.  Subsequently, President Bush informed Congress on December 17, 2003, that he was invoking another statutory provision, 10 U.S.C. § 603, which

also states that it applies in time of war or national emergency.  There would have been no need for the President to specifically identify the statutes that he was invoking if, by their terms, they applied in time of national emergency and he was declaring a national emergency.  This suggests that because the statute here has not been invoked in an emergency declaration, the authority provided under the statute in the event of a national emergency does not apply.

¶7    The Office of Personnel Management (OPM) has not promulgated any regulations on this topic.  However, OPM has issued policy guidance on differential pay to reservists.  Its policy guidance summarily states that voluntary active duty under 10 U.S.C. § 12301(d) does not qualify for differential pay under section 5538, without mentioning times of national emergency.  IAF, Tab 14, Subtab 3 at 18.  Additionally, OPM denied a claim by an employee who argued that the national emergency catchall provision entitled him to differential pay when he was mobilized under 10 U.S.C. § 12301(d).  IAF, Tab 14, Subtab 8; *see Solamon v. Department of Commerce*, 119 M.S.P.R. 1, ¶ 9 (2012) (observing that agency interpretations that lack the force of law are not entitled to deference under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843‑44 (1984), but are "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), to the extent they have the "power to persuade" (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000))).  I believe that OPM's guidance is entitled to *Skidmore* deference and I would follow such guidance on this matter.[*]

_____
Mark A. Robbins
Member

---

[*] The Board offered OPM an opportunity to provide an advisory opinion on this subject, but OPM declined.  Petition for Review File, Tabs 4, 7.